Good morning. Please be seated. The case for argument this morning is 13-1564 SCA Hygiene Products v. First Quality Baby Products. Mr. Black, whenever you're ready. Thank you, Chief Judge. May it please the Court. The Supreme Court stated in Petrella that it had never, quote, approved the application of latches to bar a claim for damages within the time period allowed by a federal statute of limitations. The Supreme Court referred to this Court's decision in Aukerman and noted that it had not had an opportunity to review that decision. We have that opportunity today, and because Aukerman is in clear conflict with Petrella, it should be overruled. But isn't it possible that the reason they didn't have the opportunity is because there wasn't anything that needed correction? I believe, Your Honor, that more likely, because this Court has settled patent law since 1982 in the United States, that there was no circuit split that developed. The circuit split in the Petrella case arose mostly in the last 10 years and led to the Supreme Court. That hasn't impeded the Supreme Court from deciding to take a lot of other appeals. That is certainly the case, Your Honor. We take the cases as we have them, and the issue had not been raised directly. Aukerman and the Court's 1980s decisions on latches settled the point about whether latches was applicable. But in the intervening years, the Supreme Court has made it clear that it emphasizes that the division of law and equity was real, that the merger of law and equity did not allow the interposition of latches against legal claims for damages. Let me pick you up on that, because I wonder if this really is a legal claim for damages. In Petrella, lost profits was considered to be an equitable claim subject to the statute of limitations, and yet latches applied, correct? That is correct. Lost profits, no. The issue in, I'm sorry, Your Honor, let me correct that. What Petrella did as the first step, and I think it's the right one to take here, is to look at the specific remedies. It said that lost profits was equitable, even though it was subject to the statute of limitations, it still was subject to latches as well. I believe what they are referring to is the profits that would be awardable from the infringer in an accounting. Yes, yes. But they said as to that claim, latches still applies, right? As to an accounting, latches would apply, because they said in the footnote, I think it was footnote two, that while an equitable, that accounting has both aspects of legal and equitable relief, it's a protean remedy and on balance is equitable. Okay, but so why in the patent area isn't damages predominantly an equitable remedy as a result of the 1870 statute, which said specifically that damages would be recoverable in equity? Why doesn't that make damages an equitable claim in the context of patent law? It's also a legal claim, it's both, but most of the suits for damages were in equity in relation to an injunction, so why shouldn't we look at what the predominant character of it was and say as a result of the 1870 statute, damages in patent law, unlike copyright, is an equitable remedy? I think the analysis is the right approach, but the conclusion is we respectfully disagree. There are three remedies in the Patent Act and there are three remedies in the Copyright Act. Damages to the infringer and accounting, which could involve assessing the infringer's profits and injunctive relief. The accounting went away, it was abolished in patent law, but the analogy is exact. We have damages which were rewardable for the infringer's damages, could be lost profits, but it's the infringer's damages and that has always quintessentially been a legal remedy on the law side of the court. Well, why is that? I mean, when the Congress in 1870 said specifically that damages are an equitable remedy, maintainable in an equity court, doesn't that make it an equitable remedy? Not at all. That is exactly the same thing that happened in the copyright law. Copyright law allowed for an accounting and they then amended the law in about 1919 to allow for the ancillary relief award of damages as an ancillary remedy in an equitable case. So the parity is exact, the parallel is exact. The fact of the matter is that damages is a legal remedy. The fact that it may have been awarded in ancillary fashion in copyright or patent law doesn't make the remedy different and doesn't make the analysis any different. There's no distinction. Can I follow up on this point to make sure that I understand your answer? So under Section 504 of the Copyright Act, which the Supreme Court does reference, and I think it's footnote 1, not footnote 2, but it talks about damages and profits. And the actual quote from the statute is the copyright owner's actual damages and any additional profits of the infringer. And in that footnote, it seems to me the Supreme Court indicates that the profits may be inequitable in this case, but it never suggests that the damages are. And is your position, as I understand it, that they have actually drawn this distinction between damages as a legal remedy and profits of the infringer, disgorgement in the old-fashioned patent cases? Precisely. And that would be equitable if it still existed, but it doesn't. Precisely. The first step in the process is to look at the character of the specific remedy. A damage claim has historically been a remedy in law, in copyright and patent law. There are situations where you can collect the profits of the infringer. That was done historically through an accounting. That was abolished in patent law but retained in copyright law. In the footnote, I take the correction it was footnote 1, at the very beginning of Petrella, the Supreme Court said, first step, let's determine the specific remedy asked for by the plaintiff. Is it legal or equitable? And with respect to an accounting, they said there are elements of both in an accounting because money is awarded, but we find it's a protean remedy and that it should on balance be considered equitable. So do I hear you saying that after the merger of law and equity, equitable courts are prohibited from providing equitable relief when the facts may cry out for equitable relief? No, not at all, Your Honor. Equity is obviously still at play in patent cases. Injunctions can be awarded. That's the quintessential equitable relief. The only distinction between... You're saying there's a limit on the equitable relief? Under Petrella, equitable relief could be curtailed in light of latches in, quote, extraordinary circumstances. Do you think it makes any difference that copyright infringement may be a crime when patent infringement is not? I do not, Your Honor. Do you think it makes any difference that a copyright can last for 100 years, 125 years, and the patent is over when it's over? The only difference there, Your Honor, is it cuts in our favor because from a policy perspective, the chance that you would lose evidence or that there would be difficulties because of the delay is less. Congress said in a copyright case, in a copyright context, where you could have 67 years of life and where the author could be long dead before a suit arises, that the way to deal with that problem, the way to balance all the interests here, is to have a three-year look-back window. That balances the need to get cases to court, but also the infringer's desire not to have to file a lawsuit every time there's some minor infringement, and that was the balance that Congress struck. You see what I'm... I'm trying to understand why... Your position is that these must be treated identically, and we all know that there are giant differences between copyright and patent. The most obvious, of course, is that you have to copy to infringe a copyright, whereas you may not know that you're infringing a patent, and all of the other things that we've been discussing, and yet you are telling us, never mind any of that. They must be treated identically in this specific area. I'm certainly not denying that there are differences between patent and copyright substantive law, but I cannot see, in the Petrella case, any room for distinction on the basis that they ruled with respect to copyright law from patent law. If we were to disagree with you on that, and if we were to say that we regard the 1870 statute as creating damages as an equitable remedy, would you then lose? I would not, because in 19... I believe it was 1919, the exact same thing happened in copyright law. They had equitable cases at the copyright side, and copyright cases on the equitable side of the court, and there was a debate about whether courts acting in equity had the right to award damages as ancillary relief or whether the plaintiff would have to go off for a separate action at law, and Congress settled the issue in exactly the same way as they settled it for patent law in 1870. Not exactly the same way, because the 1909 copyright statute allowed the combination of legal and equitable remedies. There's no comparable provision in patent law. I think the point you're trying to make is a distinction which doesn't exist between copyright and patent law, Your Honor. In equity, generally, an accounting could be provided in patent law and in copyright law, and in other areas as well. And the equity courts eventually developed the right to provide ancillary relief where the main thing being sought by the plaintiff was an injunction or an accounting. They could also... Yeah, but the Supreme Court cases dealing with the 1870 statute don't characterize it as ancillary relief. They talk about damages being an equitable remedy, right? Damages is not an equitable remedy. It's a legal remedy which was available under the Patent Act on the equity side of the court, and equity jurisdiction was enlarged to include damages. But that was exactly what happened in the Copyright Act, and Petrella said damages are legal relief. Well, one thing I think we can all agree on, that one of the distinctions between patent and copyright law is that the Patent Act has Section 282. So what, in your view, for the parameters, what does the absence of liability for infringement in 282 mean? The absence of liability... Section 282 has, as you point out, it defines the defenses in a claim for patent infringement. The absence of liability for infringement could mean that the infringer did not commit the acts which it is accused of. Well, except that that is preceded by non-infringement, and so one would assume that that scenario is covered by the first and not by that phrase. I tend to agree, Your Honor. We don't have a lot of legislative history on that, but I tend to agree. I think the absence of liability for infringement would also certainly include situations where the plaintiff has agreed to allow the defendant to permit acts which would otherwise constitute infringement, like a license, an implied license, maybe even estoppel. So how are we to know? I mean, obviously they didn't articulate, they didn't call out a license. So where do we draw the line? So you would be comfortable if we were to construe absence of liability to cover licenses. Well, why should we draw the line there? Laches existed beforehand. Why wouldn't Congress have intended to include laches in that bucket as well? Laches was not done away with. It still applies to equity. It still applies to equity. It was a defense before 1952 to actions in injunctive relief and before accounting was abolished to an accounting. But it was not a defense that was recognized against a legal claim for damages brought at law. And we've looked at, if you look at Walker on patents from the time period, it says there are 28 defenses to patent infringement on the law side of the court, and there are two additional defenses that are only applicable to equity, equity jurisdiction and laches. Can I ask you, do you think laches continue to apply after 1952 because of 282 or independently of 282? I think it continues to apply actually because of 283, which says that injunctions can be granted on such terms as the court deems just and under equitable principles. Because it is at least possible to wonder about the body of patent-specific case law on laches up to 1952, of which, certainly by 1952 and a little bit before 1938, there appeared to be a pretty uniform recognition. Much of it in dicta, but not all of it, that legal damages could be barred by laches. I don't believe, I respectfully agree that there were some cases, but there was clearly no settled law on the topic, and the vast majority of the cases were on the equity side of the court. Right, most of them were on the equity side of the court. After 1938, it became immaterial which side of the court. A few cases went the other way, some of them in dicta, including the one that seemed to have gotten all this started in the Fifth Circuit because there was equitable estoppel. Nevertheless, there was no declaration, no statement, let alone a ruling by any court, was there before 1952 that made the legal damages equity distinction and said laches doesn't matter for the legal damages because we have a statute of limitation. I'm not yet talking about what to make of this body of law, just as a descriptive matter, isn't that right? Specifically patent case, there certainly was a body of law that said that. Specifically patent case. There's no case that specifically said that, and part of the reason for that is we sit here today in 2015, we don't have a real feel for the division of law and equity anymore. But for those who are practicing law in the late 19th century and early 20th century, that was a reality. If you wanted to file a case, you had to decide whether you were going to file on the legal side of the court or on the equity side of the court. Yeah, but they were filing the damage claims on the equity side of the court. That's what many of those cases involved, and as we said in Bosch at that time, the reference to an accounting included a claim for damages as well as before 1946 a claim to lost profits. So these cases, in saying that laches were available, were addressing damages, right? They were addressing the ability of a plaintiff to proceed in equity, and the court said if you committed laches, you were barred from the equity courts. If you look at Lane and Bodley… But on the equity courts, you could secure damages, right? You could secure damages, and Lane and Bodley, which we were asked to comment on, is an interesting case because it said that laches could apply. It was a bill in equity, but we know that from the procedural history, if you look at the lower court case, what was actually requested was that the complainant's bill in equity be dismissed and the plaintiff remitted to the remedies on the law side of the court. That was the only Supreme Court precedent we have on the point, and it fools us a little bit today because we don't have the mental furniture to think about law and equity being different, but in the days when the statute was passed, we do. How do you get around the discussion in Bosch where this court relied on the history of damages being recoverable in equity to say that, effectively, that a damages trial today is the same as an accounting? Well, I think, as I understand it, Your Honor, an accounting, which was a particularly invasive, almost Dickensian remedy the way they describe it, and into the infringer's profits, looking at the infringer's books, special masters, it was a very specialized procedure. It was often invoked because the damages could be quite, the collectible money could be quite high, but it was conducted by an equity court with a special master, not to a jury. Damage claims go to a jury. It's very clear that today's remedy under Section 284 is a legal remedy. But we acknowledge that damage claims now go to the jury, and we still said in Bosch that that didn't matter given the history and the development of the combination of damages and lost profits. Your Honor, there are two schools of thought here. There's a majority opinion and a dissenting opinion in Petrella. All I can say is that the majority in Petrella recognized that an accounting was out there. There's a very long history in the Copyright Act, just as in the Patent Act, of allowing equity courts to award damages to apply complete relief to the cause of action. But it was no part of the decision in Petrella, and we don't believe it would change the Supreme Court's decision. Now, if we agree with your theory on latches, just to get to the substance, the merits of this case, you aren't disputing that you might nonetheless be subject to equitable estoppel. Is that right? No, Your Honor. Well, the District Court granted summary judgment on estoppel as well. The panel reversed that decision and remanded it, and we obviously believe that was correct. But if your question is, are we saying that equitable estoppel is barred by Petrella, the answer is no. The Court recognized estoppel as a defense, although a more limited one, perhaps, than has been in the way it's been used in this Court. The entire thrust of the precedent, the Federal Circuit precedent in Auckland, was to distinguish between latches and equitable estoppel and to determine what's right in the patent area without worrying about other aspects of property rights. And so there were distinctions drawn. And so, all right, so to be clear, you're not disputing the applicability of equitable estoppel? As a legal matter, we accept that the principle applies to patent cases, obviously, on the facts of our cases. Not as a legal matter. As an equitable matter. As a... I knew that would come at some point today. Fair enough, Your Honor. As a... It's actually a... It is equitable... I want to say this correctly. Equitable estoppel is a defense which was long recognized on both the equity and the law side of the Court at common law, and it would still apply today in patent cases. Is that... Can I ask you, is that because of 282? I think, Your Honor, that it is because... The way I view it, it would be because of 282, but because of the second prong of 282, absence of liability for infringement, or perhaps 271, which says it's an infringement whoever acts in a certain way without authority. There's a lot of... And I want to expand on that just briefly. There's a lot of discussion in the case law about laches being a cousin of equitable estoppel. I think, actually, equitable estoppel is actually more like a brother or a sister to implied license, and to license... Can I just ask for clarification, maybe? I've read too many cases in the past few days. Petrella also preserved equitable estoppel in the absence of anything like 282 in the Copyright Act, right? They did, yes. So it's... I guess, following up on Judge Toronto's question, is that... Do you think it's because of 282, or you just think it exists out there in the ether in the absence of language, and 282, therefore, means something else? I think 282 was designed to maintain the traditional defenses that were available in 1952. But that's actually exactly why I asked the question. I assume that was evident. If equitable estoppel comes in by way of 282, never mind whether it's, you know, Clause 1, Clause 2, or Clause 3 of the relevant provision, and it comes in because that was the preexisting state of the law, why not the same for laches? Subject, of course, to the issue, do we look at the preexisting state of laches as described in patent law cases, or more generally, because it appears that there was a dramatic disparity between those two things. I don't agree that there was a dramatic disparity. At the time of the Patent Act of 1952, and before and after the merger of law and equity, the Supreme Court said you cannot apply laches to bar legal claims for damages. And a lot of lower courts applied laches, but a lot of lower courts, and I think uniformly said that laches in patent cases could bar legal claims, though admittedly very few so held. Very few held that. If it were really the law, and that patent law was the only area of law where the rule was not observed, you would expect to see lots and lots of cases barring the claim for legal damages, but they just don't exist. And when you look at the treatise of the time, Walker, it says 28 defenses on the legal side and two on the equity side. Right, but that's not the only thing Walker says. Walker does have the 880B statement that's quite explicit saying you can apply laches against legal claims, and then the 1951 supplement of Walker says more of the same, reciting three or four more. I'm into my rebuttal time, so I'll try one last comment, and then I'll sit down. What Petrella has said is that we need to go back and look at the division of law and equity, that it's real, that the merger of law and equity did not allow the assertion of laches against damaged claims where there's limitations, period. The court said, we've said over and over again before and after the merger of law and equity that that is the case. Now why have they had to say that over and over again? The reason is because the merger of law and equity has created confusion in the courts. Well, today we have Petrella, and what they've said is that distinction has to be taken, and what it says is that we must apply the same rules to patent law as to other areas of the law, and we think that's the way the decision... You cite Walker as a commentator on the particular issue, but there was a more recent commentator to the 1952 act, and that's Federico, who said, he stated a proposition that the defense is holistic in 282 included laches. What do you think he was basing that on? I think all he was saying was that the equitable defense of laches and two others he mentioned are preserved, and it just begs the question, what is the equitable defense of laches, and when does it apply? He simply was stating that there was no intent to remove the equitable defense of laches, but he didn't say, nor did anyone in Congress say, what would have been felt to be remarkable at the time, that patent law was to be unique, and that laches could be applied to bar a patent claim for damages on the law side. Mr. Federico was as close to the process in 1952 as any. I understand that, Your Honor. I understand that his views have been respected. My main point here is that I don't know what the Supreme Court would think that Mr. Federico's comment was sufficient basis to distinguish patent law, but I also think that we need to be fair about what his comment really is. All he said was that the equitable defense of laches is preserved. He didn't say that it was being extended to legal claims on the law side of the court, which would have been unique in U.S. law. Maybe it wasn't an issue. It was so clear. If we look at 1952, if we look at the 30s and 40s, we have the Supreme Court saying in 1935 that applying a laches bar to legal claims is something that's simply not done. Except in the patent area, every case recognized... Only on the equity side of the... Well, I'll do respect, Your Honor. Only on the equity side of the court, and that's exactly what they did in Compound Law. Where damages claims were being asserted. No, the complainant would be barred from the equity court. What would happen after that, in Lane and Bodley, the plaintiff would have gone to the law side of the court to claim damages, the same as in copyright law. Well, that's simply not true. There are many, many cases in which people have recovered damages on the equity side of the court, and the Supreme Court in numerous decisions recognized that. I think you may have misunderstood what I said. I think what I've tried to convey, Your Honor, is that in Lane and Bodley, the complainant asked that the bill be dismissed, and that the complainant remanded to his remedies on the law side of the court, indicating that at least at the time of Lane and Bodley, late 19th century, people thought that latches could bar the bill on equity, but wouldn't affect the plaintiff's right to legal damages. Okay. You're interrupted. Thank you. Mr. George. May it please the Court. I'd like to start with the holding of Petrello, which is really quite limited and not as broad as the SCA and the amicus would have it. The real holding is that if you have a statute of limitations, then latches can't bar legal relief. That's it. You can still get equitable relief. The converse, latches can still be used to bar equitable relief. The converse of that is that if you don't have the statute of limitations, then latches can bar all relief. And that is, in fact, how it has been in the past. So your position is this is not a statute of limitations. Absolutely not. Can you think of any circumstance in which the result would be different given your traditional statute of limitations, which you can't bring a claim, versus the limitation among the tenure of the damages, which is what we have here? I'm not sure I understand your question, Your Honor. What is the practical difference between the two in terms of how they operate? Oh, I understand your question. The practical difference really is, and this is discussed in the CTS case, which is a Supreme Court case that came three weeks after Petrella. Section 286 is much more of a statute of repose than it is a statute of limitations. And there's a whole list of practical differences between the two. Statute of limitations are procedural. They're subject to tolling. Statutes of repose are substantive and are not subject to tolling. But in terms of what Congress is doing, what's the real difference? Because really, isn't it about essentially a separation of powers issue? If Congress wants to set a period for relief, they're allowed to do so and the court shouldn't interfere by interposing equitable doctrines. So I don't, tell me why it really matters whether we describe it as a statute of limitations or not for purposes of this laches question. For two reasons. One, if we decide that 286, you know, looks, smells, tastes like a statute of limitations and therefore Petrella should apply, we're doing violence to 282. So we have, we have, Congress is telling us two things. One, What violence to 282? We're taking away the laches defense from 282. Not necessarily. We may be taking it away for, to bar legal damages, but we're, we could still preserve it to bar equitable relief. Yes, but. Which is what Congress is telling us to do in Petrella. Well, what, what 282 though was enacted and that we have a legislative history was to preserve the defenses. Okay, let me, let me ask you about that. I think this is, for me at least, is the most problematic portion. Hypothetically, let's say we have 282 and 286 enacted in 52 and we don't have any of the pre-52 case law or legislative history although I really don't even see any legislative history. All we have is the plain language of 282 and 286. Given how Petrella tells us to look at statutes like that, would we still find laches in 282 without the pre-52 case law? Absolutely, because Petrella is limited to statutes of limitations and the CTSA. Okay, let me, let me. Why don't you, why don't you put that aside? Yes, let me. Put that, you're not getting a lot of traction on that argument. Assume that they're the same. That the statute of limitations is in both Petrella and, and, and the patent law. So the question is, is Petrella, is Petrella different for patent law than for copyright law? And, and, and so what I'm being asked to assume is one, that 286 is a statute of limitations. We reject your argument that there's a difference between the two statutes. And two, that there was no pre-1952 case law. Okay, we still have laches because post-1952 to today, we have, we've used, in the courts, have used laches to bar legal relief damages. And that practice has been ratified by Congress who has Where, where's the ratification post-52? It, 282 has been amended two or three times and, and this, the Congress has never changed it. They're presumed to know how the courts are interpreting it. They're presumed to know that this court decided to walk them in in 19, you know, over 20 years ago and it's been consistently applauded that way. Well, wouldn't that have then prohibited the Supreme Court from doing what they did in Petrella? How do you reconcile the argument you just made with the Supreme Court doing this in Petrella? There's no Didn't Congress ratify in the copyright context? There's, there's no section, there's no counterpart to Section 282 in the Copyright Act. Yes, but we, you, we didn't predicate your answer to Judge Taranto or Judge Hughes on 282. You predicated your answer to them on the notion that somehow Congress was ratifying post-52 application of the law. Post-52 application of Section 282. So Congress enacts 282 and 286. 282 says unenforceability of the defense. Judge Hughes asked me to assume that there's no case law before and I did that. And Aukerman was interpreting and applying 282. Aukerman is based on 282, Your Honor. Correct. Yeah, but there was case law. So why don't you discuss the case law that existed between 1897 and 1952. I mean, pre-52 we had many cases that apply latches to bar legal remedies. We had the Brennan case, 7th Circuit, 1950. Dismissed the complaint, the entire complaint due to latches. We had universal coin and lock in the 7th Circuit. Dismissal of a suit seeking damages on grounds of latches. Can I add to this? Yes. My recollection of the cases is that what you just described is quite clear in the 7th Circuit which had a line of cases perhaps beginning with George Meyer and certainly extending to real legal claims. There's the 3rd Circuit case in Banker. Correct. And besides that I'm not sure there's any case that actually dismissed a legal claim for damages. Is there anything else? I have Frank Smith hardware in the 2nd Circuit where they denied appellant all profits and damages based on latches. That's in the 2nd Circuit. I have the Hartford Empire case in the 4th Circuit. Granted, the On the fact that one of the    denied was the Hartford Empire case. So I'm not asking about statements that recognized its availability of which there is a fairly long list of cases. I'm asking about actual holdings that rejected legal damages claims. In addition to the 7th Circuit cases, the 3rd Circuit case, I have Schaefer in the 5th Circuit and Hartford in the 4th Circuit. And the Johnson & Johnson brief on pages 6 and 7 lists all of the cases in      not   statements that rejected legal statements that rejected legal claims. And the  Johnson   6 and 7 Johnson 6 and 7 brief on pages 6 So the state of the law prior to 52, we have many, many cases where Latches was using the patent context to in essence throw the whole case out, the legal and the equitable cases. And we also have, you know, the Supreme Court statement in Petrella that if you have a statute of limitations, Latches can bar legal relief. The converse is if you don't, it can and it has in the patent world for many, many years. The other thing that's interesting is if you go back in time, as Mr. Black did, if you were sued in law for patent infringement, you could go into an equity court back in the 1800s and basically have the case enjoined based on the statute   The Supreme Court statute of limitations was available to, in essence, kill the legal case and you had to go to a different court. You had to go to equity and ask the equity court to enjoin the law court. This court discussed this in the Liberty case. Eventually the statute was changed. A statute was promulgated 274 which allowed you to go across the street to the court  you had to go to the court and ask the equity court to enjoin the law court. The statute was changed 274 and the court was able to  across the street  the court and ask the equity court to enjoin the law court and ask the equity court to enjoin the law court to  the law court. The rule will be unless it acts and therefore defines the task for it to undertake if it wants to act. What we have at best in 52 is something that is strongly suggestive but not clear enough so that the Supreme Court has been using the clear and   standard for all these years. The Supreme Court has also said when looking at our outcomes we have to look at the application of non-patent specific doctrines like the standard for injunction and like latches that we should not have a special rule, hasn't it? It has but Your Honor, I think the thought that         what would you say in patent cases is on the legal side in terms of qualifying relief and on the equitable side. Clearly injunctions are on the equitable side but I'm trying to figure out in my mind is there anything else? All the examples in Petrella, every one of them is only injunctions and destruction of goods which is available or disgorgement which is defendants' profits. Those two don't exist in patent law, correct? There's no destruction provision or disgorgement provision any longer in patent law. So tell me what if anything other than injunctions is on that equitable side? Oh reasonable royalty. And in fact the... And damages in general as a result of the 1870 statute. Exactly. Would a claim for, a pure claim for reasonable royalty these days have to be tried to a jury? I believe it does and I think what's interesting, but I don't think that's determinative here and I'll tell you why, Your Honor. If you go to footnote one of Petrella, they talk about the profits and they say gee, this is, it's protean, it's legal aspects, there's equitable aspects to it. And the footnote goes on to say that for the purposes of this case, it's not as equitable. And then when you get to the end of the decision, they say Well, what they say is they don't actually use the term latches as applying to profits. They say delay can be taken into account because it's an equitable remedy and they cite Judge Learned Hand's District Court decision from 1916 which says accounting is equitable and so because it's equitable we can do equity. But restitution has always had this unique character of sometimes being legal and sometimes being equitable. Damages, as far as I know, has not had that unique character of sometimes being one and sometimes being the other. Actual damages, we have to distinguish actual damages from a reasonable royalty for example. The footnote one in Petrella actually says, talks about restitutional remedies broadly. So we're talking about restitutional remedies broadly. When we get into what's interesting is that a royalty is not restitutionary. It's valuing the thing of the plaintiff that was used without authority by the defendant. Not the established royalty. I mean a reasonable royalty that you are simply trying to value it not that the plaintiff is      same  and that the defendant is not entitled to the same rights and that the plaintiff is not the plaintiff and that the defendant   entitled   same rights  that the plaintiff is not entitled to the same rights and that the plaintiff is not entitled to the same rights and  the  is not entitled to the same rights and that the plaintiff is not legal to the same rights and that the plaintiff is not entitled to the   and  the plaintiff has not gotten any rights and that the plaintiff has gotten any rights and that the plaintiff has gotten any rights and that the plaintiff has got not have had  rights and that the plaintiff has not got any rights and that the defender has not gotten any rights and that the plaintiff has not gotten any rights and that the defendant has not gotten any rights and that the plaintiff has not gotten any rights and that the   not gotten any rights and  the defender has not gotten any rights and that the victim has not had any rights and that the law          that the victim has claimed is current and doesn't matter to the shooter such that they are weight a lot more than    claimed is     to the shooter such that they are weight a lot more than the shooter has claimed is current matter to the shooter has claimed claim    doesn't   shooter has  is current and doesn't matter to the shooter and the shooter can claim is current and relevant to the group and the group is in the context of the case and the availability of a complaint in the state of the U.S. was not a piece by because of the lack of a uniform standard. They were applying state law, which was a disaster. And this takes us back a little bit. There's no question that the merger of law and equity and the concepts that were applied in courts, which were common knowledge to people who practice law at the time are somewhat foreign to us today. There's no question that the case law is murky. There are cases in our favor that say latches should not apply in the patent context, like the Middleton case. There are other cases with lots of dicta. The vast majority of the cases are in accountings on the equity side of the court. A reasonable royalty under section 284, the way the statute is structured, it says the claimant prevails, the claimant shall be awarded damages, comma, not less than a reasonable royalty. I think it's very clear that that's a species of damages. It's a way of calculating the damages which have been suffered by the plaintiff. On the copyright side, when royalties are awarded, are they considered damages under, what is it, 504 or whatever the provision is? I believe they are, Your Honor. I believe they are. And similarly, if the profits of the claimant are awarded, that is damages to the claimant. If the profits of the infringer are awarded, that is equitable restitutionary remedy, as Your Honor pointed out. I think the real question comes down to the ratification point and really what is the standard of proof here, given where we are with Petrella and whether the Aukerman decision should stand. Given what the Supreme Court has said, that it has never approved the use of latches in the context where it has a statute of limitations, and given that the Patent Act has a statute of limitation, we submit that the- Well, that's not quite true because the statute of limitations applies to lost profits. And yet in Petrella, the Supreme Court was very clear that latches would apply to the lost profits claim, right? I believe what they're referring to was the profits of the infringer. Well, yeah, but the profits of the infringer were also subject to the statute of limitations. And yet latches was available with respect to that claim. Based on what the way they analyzed the case, there are other ways to do it, but the way they- Is my statement correct or incorrect? Your statement is correct because they said that profits of the infringer was an equitable remedy because it hearkened back to restitution, which although it related to money damages, it was effectively a protean equitable remedy. And that remedy, therefore- Even though it was subject to the statute of limitations. The claim, what they said was that the statute of limitations applies to legal damages, reasonable royalty, but not to the equitable remedy. It says that the lost profits claim is subject to the statute of limitations. Yes, but that's what we have to divide. The lost profits of the infringer are damages. The lost profits of the claimant are damages to the claimant. That is subject to the statute of limitations and to latches, right? I don't, I don't understand the case that way. It says specifically that should the felon ultimately prevail on the merits of district court in determining appropriate injunctive relief and assessing profits may take account of her delay in commencing- Maybe I'm misunderstanding, but I understand that to mean the profits of the, of the infringer. Yes. But the point is the profits of the infringer also limited by the statute of limitations, but also benefit from latches. Correct? Profits of the infringer. Yes, that is correct. That is correct. In light of PTS, is there a distinction between the copyright act and section 286 that arises from the fact that in the copyright law, the statute of limitations begins to run on the date of their approval of the claim. Whereas 286 is a look back period. I think one of the features of the statutes, which is however it's termed, both of them are what the Supreme court has now called a look back window. In fact, if you look at the section 286, you actually would quite easily call that a look back window because of the way it operates. It's interesting that they looked at what's the three year statute of limitations in the copyright act, which is a more, in a more traditional form, a claim shall be barred unless broadly accepted. Right, but isn't that, but PTS specifically states described the statute of limitations as something that begins to run on the date that a claim is accrued and that's not what happens. Are we to ignore the language in PTS? Well, our view is that that is a stat, that section 286 is a statute of limitations. It was called that by the Congress in 1896 and 1952. But more importantly, the holding of Petrella is not limited to a statute of limitations. It says whenever Congress has provided a limitations period, what a way to decide a rule of decision to determine what is viable and what is not viable. When Congress has provided a rule of decision, the courts are no longer, they no longer need to act. They no longer need to apply laches. I think the fundamental point here is the ratification point. You have a murky record, cases going both ways. You have a concept, which was foreign to common law. We don't really have cases going both ways in the patent area, right? I think the Middleton case supports us, your Honor. The Middleton case is the Eighth Circuit, if I remember correctly. And there's an earlier Eighth Circuit case that says that laches does apply to damages claims. And there's no repudiation of that earlier precedent in Middleton. I read the case. I think it supports our position. And I think the area in patent law was murky as it was in, you know, the merger of law and equity created a lot of confusion. And the Supreme Court repeatedly told courts, you know what? But both before and after the law merger of law and equity, we've said laches does not apply to legal claims. We submit that it applies to patent cases as well, unless there was some clear congressional statement that patent law was different. And we simply don't have that in the Patent Act. We don't have that. And the support that the defenders of laches have proposed a comment from Mr. Overbroad reading of Section 282 are not enough to distinguish patent law from copyright law and every other area of the law. Thank you. We thank both counsel for very helpful arguments. That concludes our proceedings for this morning. The case is submitted.